917 So.2d 293 (2005)
MORNINGSIDE CIVIC ASSOCIATION, INC., James D. Wing, and Cesar A. Hernandez-Canton, Petitioners,
v.
CITY OF MIAMI COMMISSION, City of Miami, Kubik, LLC, and Biscayne Premier Investments, Inc., Respondents.
No. 3D05-1381.
District Court of Appeal of Florida, Third District.
December 21, 2005.
Baker & McKenzie and Donald Hayden; Holland & Knight and James D. Wing, Miami, for petitioners.
Jorge L. Fernandez, City Attorney and Rafael Suarez-Rivas, Assistant City Attorney; Greenberg Traurig, P.A., and Elliot H. Scherker and Lucia Dougherty, Miami, for respondents.
Before COPE, C.J., and SHEPHERD and ROTHENBERG, JJ.

On Rehearing Granted
COPE, C.J.
On consideration of the petitioners' motion for rehearing, we grant the motion and withdraw our previous order denying certiorari. We substitute the following opinion.
Petitioners Morningside Civic Association, James D. Wing and Cesar Hernandez-Canton (collectively "Morningside") petition for a writ of certiorari to quash a decision of the appellate division of the circuit court. The appellate division denied Morningside's "first tier" petition for certiorari which sought to quash a zoning resolution of the City of Miami. The zoning resolution, to which Morningside objected, granted a major use special permit ("MUSP") for respondents Kubik, LLC and Biscayne Premier Investments, Inc. (collectively "the developer"). We conclude that the circuit court panel applied *294 the wrong ordinance in denying the petition and thus departed from the essential requirements of law.
The developer filed an initial application in the fall of 2003. In December 2003 the Planning Advisory Board recommended that the application be denied, so the developer decided to modify its proposal.
During this time the City was considering amendments to its zoning ordinance, including section 1305 of the Miami City Code. The amended version of the ordinance went into effect in January, 2004. The amended version of the ordinance requires that the City Commission make certain written findings with regard to seven different "design criteria."[1]
On February 10, 2004after the effective date of the amended ordinancethe developer submitted the revised application which included new architectural plans for the site. The letter submitting the new plans stated that this was a "substantial modification."
When the application came before the City Commission for hearing, a presentation by Morningside quoted the criteria from the new ordinance. Further, the transcript indicates that the speakers representing Morningside divided their presentation so as to have each speaker address one of the relevant seven criteria from the new ordinance. Thus the correct ordinance was addressed in the proceedings below.
The City Commission approved the project without making any of the written findings required by amended section 1305.
Morningside petitioned for certiorari in the circuit court appellate division seeking to quash the resolution. In the petition Morningside again addressed the new ordinance. In its response in the appellate division, the developer simply inserted a footnote saying that the old ordinance was the correct one.
The circuit court appellate panel denied the petition and went on to state:
The next consideration on certiorari review is whether the commission observed the essential requirements of the law. Here, it is evident from the City's resolution, R-04-0383, that the City did apply the correct law under the circumstances. The governing body of law can be found in the City's Zoning Code, sections 1305 and 1703.
Opinion at 4. The panel then set forth the pre-2004 version of section 1305 in a page-long footnote and found that the zoning resolution complied with that language.
By motion for rehearing in the circuit court appellate division, Morningside pointed out that the court had quoted the wrong version of the ordinance. The circuit court appellate division denied the motion for rehearing without explanation.
Morningside then petitioned for certiorari in this court. Morningside argues that the 2004 version of the ordinance *295 applies to this case and that the circuit court appellate division applied the incorrect law by relying on the pre-2004 version of section 1305. We agree.
The question before us is which version of section 1305 applies to this case. The developer initially filed a complete application in the fall of 2003. The developer takes the position that since it submitted a complete application in 2003, it follows that the pre-January 2004 version of the ordinance is applicable.
However, after the Planning Advisory Board recommended that the application be denied, the developer made the decision to modify its proposal rather than pursuing the original proposal before the City Commission.
In January 2004 the amendments to section 1305 took effect. The modified application was submitted thereafter, on February 10, 2004.
The City's zoning resolution states, in the second "whereas" clause, that "on February 10, 2004, ... [the developer] submitted a complete Application for the previously reviewed Major Use Special Permit application...." (Emphasis added). By the terms of the resolution, the City treated the application as being complete on February 10, 2004. This was after the effective date of the new ordinance.[2]
Section 1305.2.1 of the zoning code provides in substance for grandfathering of "any complete application for development filed prior to January 1, 2004...." (Emphasis added). As stated in the zoning resolution, the application in this case was not complete until February 10, 2004. That being so, the January 2004 amendments are applicable to this application.
The exercise of "second-tier" certiorari jurisdiction is appropriate where the circuit court appellate division has applied the incorrect law. See Miami-Dade County v. Omnipoint Holdings, Inc., 863 So.2d 195, 199 (Fla.2003); City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla. 1982). The appellate division opinion makes clear that the appellate division panel relied on the pre-January 2004 version of section 1305, whereas the panel should have applied the amended version which went into effect in January 2004.
The developer argues that Morningside's position has not been properly preserved for appellate review. We disagree. Morningside relied on the correct version of section 1305 when it was before the City Commission, and raised the point again in the circuit court appellate division.
For the stated reasons, we quash the ruling of the circuit court appellate division.
Certiorari granted.
NOTES
[1] Specifically, the 2004 version of section 1305 states:

[T]he City agent, board or commission that is charged with decisions concerning each of the special permits shall review the proposal before them and shall make, or cause to be made, written findings and determinations in accordance with the established applicable criteria set forth in this zoning ordinance and the City Code.
[Emphasis added]. Section 1305.2 then sets forth "design review criteria" for: 1) Site and Urban Planning; 2) Architecture and Landscape Architecture; 3) Pedestrian Oriented Development; 4) Streets and Open Space; 5) Vehicular Access and Parking; 6) Screening [of parking] and 7) Signage and lighting; and 8) Preservation of Natural Features.
[2] Additionally, in Section 7 of the resolution, the Commission states: "The application for a Major Use Special Permit, which was submitted on February 10, 2004, and on file with the Department of Planning and Zoning in the City of Miami, Florida, shall be relied upon generally for administrative interpretations and is incorporated by reference."